## PHILIP COSTANZO *v.* TOWN OF HAMDEN ET AL.
### (6029)

DUPONT, C. J., BORDEN and DALY, Js.

Argued November 15, 1988—decision released April 25, 1989

*Gregory A. Sharp,* with whom, on the brief, was *Celia L. Barotz,* for the appellant-appellee (named defendant).

*Thomas E. Crosby,* for the appellee-appellant (plaintiff).

DUPONT, C. J. The plaintiff brought this action against the defendant town of Hamden,[1] alleging that the defendant, through its building official, acted illegally and arbitrarily in ordering the partial demolition of the plaintiff's five-family house. After a jury verdict was returned for the plaintiff, the defendant filed a motion to set aside the verdict, which was denied. The defendant has appealed, claiming that the trial court erred (1) in denying the defendant's motion to set aside the verdict on the basis that the defendant should have been permitted to amend its special defenses to assert the plaintiff's failure to exhaust administrative remedies, (2) in denying the defendant's motion to set aside the verdict because the evidence failed to establish that the actions of the defendant were the proximate cause of the plaintiff's damages, (3) in its instructions to the jury on damages, and (4) in failing to instruct the jury on the question of whether the condition of the plaintiff's building constituted a nuisance. The plaintiff has cross appealed, claiming that the trial court erred in denying his motions for an additur.

The jury could have found reasonably that the area in which the property is located is zoned for three-family structures, but that the plaintiff's five-family structure existed within its zone as a valid nonconforming use. The jury could have found, further, that on

---

[1] The plaintiff also brought suit against Blakeslee, Arpaia and Chapman, Inc., a crane company, which suit was settled and subsequently withdrawn during trial. As used in this opinion, "defendant" refers only to the named defendant.

July 11, 1981, a fire occurred which resulted in extensive damage of 25 to 40 percent of the structure.

Other facts which could have been found reasonably follow. On July 13, 1981, the building official of the town of Hamden, Clifford Lindgren, arranged for a crane company to remove certain portions of the structure. Sometime after noon on that date, a crane arrived at the plaintiff's property and Lindgren directed the crane operator to demolish the third floor gables and dormer of the house, over the objections of the plaintiff, who was at the scene. The crane also demolished two chimneys. As a result of the demolition work, 55 to 65 percent of the structure was destroyed.

On July 23, 1981, the plaintiff received an order from the town building official, requiring the plaintiff to engage a licensed demolition contractor to demolish the structure totally within thirty days. The plaintiff contacted the town building official to determine his rights under the order and was informed that the plaintiff was required either to demolish the structure or to submit plans to rebuild the structure within thirty days. The building official informed the plaintiff that, according to town zoning regulations, the plaintiff would only be permitted to rebuild the structure to a three-family dwelling, unless he obtained a variance to rebuild to a five-family dwelling. Under Hamden zoning regulations existing at the time, if a nonconforming use was damaged by fire or other casualty in excess of 50 percent of its fair market value, the use would be lost. In response to the order to demolish, the plaintiff submitted plans to rebuild the structure as a three-family house.

The plaintiff's allegations in his complaint are that the partial demolition of his property by the town was illegal and in violation of the due process clauses of the Connecticut and United States constitutions. The plain-

tiff based these claims on allegations that the condition of the structure did not require immediate demolition, that the defendant did not give proper notice to the plaintiff, that the defendant did not give the plaintiff an opportunity to take alternate measures to secure the third floor of the structure, and that the defendant violated General Statutes § 29-302 et seq. and provisions of the Connecticut Basic Building Code, §§ 123.1 and 124.1 et seq. The plaintiff also alleged that as a result of the defendant's action in demolishing portions of the third floor, the structure could not be rebuilt as a five-family dwelling and, accordingly, the plaintiff lost the value and income from two apartments. The plaintiff further alleged that, as a result of the demolition work, he was required to expend additional sums of money to repair the house and the sidewalks and driveways of the property. The plaintiff sought monetary damages as his sole relief.

I

The defendant claims that the trial court erred in denying its motion to amend its special defenses. During the course of trial, the defendant moved to amend its special defenses to include a defense that the plaintiff failed to exhaust his administrative remedies. The motion to amend was denied.

"The trial court may allow, in its discretion, an amendment to pleadings. *Saphir* v. *Neustadt,* 177 Conn. 191, 206, 413 A.2d 843 (1979); *Wesson* v. *F.M. Heritage Co.,* 174 Conn. 236, 239, 386 A.2d 217 (1978); see Practice Book § 176." *Jonap* v. *Silver,* 1 Conn. App. 550, 555, 474 A.2d 800 (1984). Such a ruling can usually be reversed only upon a clear showing of an abuse of discretion. Id. The denial of the motion to amend in the present case requires a careful analysis because of the substance of the proposed amendment.

The proposed amendment called into question the subject matter jurisdiction of the court. It is a settled principle of administrative law that, if an adequate administrative remedy exists, "a litigant must exhaust it before the Superior Court will obtain jurisdiction over an independent action on the matter." *Owner-Operators Independent Drivers Assn. of America* v. *State,* 209 Conn. 679, 687, 553 A.2d 1104 (1989); *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 230 (1987). A question relating to jurisdiction may be raised at any time. *LaCroix* v. *Board of Education,* 199 Conn. 70, 80 n.8, 505 A.2d 1233 (1986). Once raised, it must be acted upon by the court, regardless of the form of the motion or the contents of the pleadings. Id.; *Cahill* v. *Board of Education,* 198 Conn. 229, 238, 502 A.2d 410 (1985).

The exhaustion of administrative remedies doctrine implicates subject matter jurisdiction, and we must decide, therefore, whether that doctrine as stated in the defendant's proposed amendment required dismissal of the plaintiff's action, before we can determine the other claims of error raised by the parties. See *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987).

The defendant claims that the plaintiff had an administrative remedy because he could have sought a zoning variance from the Hamden zoning board of appeals to rebuild the five unit dwelling, and that the plaintiff's failure to seek a variance amounted to a failure to exhaust administrative remedies, and thus bars him from bringing an independent action for damages. We disagree.

Whether prior recourse to an administrative remedy is required before an independent action can be entertained depends upon the injury alleged and the administrative remedy available. *Connecticut Mobile Home*

*Assn., Inc.* v. *Jensen's, Inc.,* 178 Conn. 586, 588–89, 424 A.2d 285 (1979). In the present case, the injury alleged is the arbitrary and illegal demolition of portions of the plaintiff's property. The damages claimed as a result of the demolition were the loss of a nonconforming use, the cost of repair to the house and to the sidewalks and driveways located on the plaintiff's property.

The defendant argues that, through the variance procedure, the plaintiff might have avoided a portion of his alleged damages, that is, the loss of the nonconforming use. The fact, however, that the plaintiff may have been able to mitigate his alleged damages through the pursuit of a variance does not transform the variance procedure into an administrative remedy for the illegal demolition by a town of a structure and the damages incident to the demolition. A variance procedure by which, arguably, the plaintiff might have been able to mitigate a portion of his damages, namely the loss of two rental units, does not constitute a jurisdictional bar to his entire claim for damages which included other losses. The defendant's proposed amendment impli-- cated the principle of mitigation of damages rather than subject matter jurisdiction.

"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." *Concerned Citizens of Sterling* v. *Sterling,* supra, 557. Requiring the plaintiff to attempt to obtain a variance before bringing this action in Superior Court would not further the purposes of the doctrine of exhaustion of administrative remedies. The findings and conclusions of the zoning board of appeals in denying or granting an application for a variance would be of no benefit to the trial court in resolving the issues

presented by the plaintiff's action for damages. Whether an application for a variance should have been granted or denied is a wholly different question from whether a town, through its building official, acted illegally and arbitrarily in ordering the demolition of the plaintiff's property, and whether that action was the proximate cause of plaintiff's damages.

Moreover, "[w]here an administrative remedy does not exist . . . or is inadequate . . . a party will be allowed to resort to the courts in the first instance." (Citations omitted.) *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.,* supra, 592. We conclude that the plaintiff had no definitive administrative remedy for the injuries alleged in his complaint and thus he was not barred by the doctrine of exhaustion of administrative remedies from bringing the present action for damages. We cannot conclude that a variance, if sought, was likely to have been granted, particularly in view of the time constraints imposed upon the plaintiff. Nor can we conclude that the plaintiff could have obtained an administrative remedy, even for that portion of the plaintiff's damages to which it would have applied.

The plaintiff sought only damages, not a restoration of the nonconforming use. He did not combine his action for damages with any other claim of relief. An administrative remedy cannot encompass a monetary award. *Cummings* v. *Tripp,* supra, 80. The plaintiff sought no relief that the administrative remedy could have given him. The trial court, therefore, did not err in denying the defendant's motion to amend.

The defendant's second claim of error is that the trial court erred in denying its motion to set aside the verdict because the evidence failed to establish that actions of the defendant were the proximate cause of the plain-

tiff's loss of the nonconforming use. Specifically, the defendant contends that (1) the plaintiff failed to establish that, prior to the demolition work, the structure was a legal nonconforming use, and (2) the plaintiff failed to prove that, as a proximate result of the demolition work, the plaintiff was deprived of the ability to rebuild the structure to five units.

The case appears to have been tried on the theory that, prior to the demolition, the five unit structure was a legal nonconforming use. The defendant's counsel, during his opening statement, referred to the structure as not being in conformity with zoning laws, but having been "grandfathered" earlier in time, before the present zoning laws were passed.

During trial, the plaintiff testified that the five unit structure was a legal nonconforming use. In addition, the Hamden building official testified that it was his assumption that the structure was a legal nonconforming five unit dwelling. The defendant offered no evidence to rebut this testimony.

We conclude that there was sufficient evidence from which the jury could find that, prior to the demolition work, the plaintiff's property existed as a legal nonconforming use.

The defendant also claims the evidence failed to establish that the defendant's actions were the proximate cause of the plaintiff's loss of the nonconforming use.

" ' "An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm . . . . Proximate cause is ordinarily a question of fact." ' *Tetro* v. *Stafford,* 189 Conn. 601, 605, 485 A.2d 5 (1983), quoting *Coburn* v. *Lenox Homes, Inc.,* 186 Conn. 370, 382–84, 441 A.2d 620 (1982). ' "Conclusions of proximate cause are to be drawn by the jury and not

by the court." *Fox* v. *Mason,* 189 Conn. 484, 489, 456 A.2d 1196 (1983). " 'It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion, if there is room for a reasonable disagreement the question is one to be determined by the trier as a matter of fact.' *Marly* v. *New England Transportation Co.,* 133 Conn. 586, 591, 53 A.2d 296 [1947] . . . ." *Busko* v. *DeFilippo,* [162 Conn. 462, 466, 294 A.2d 510 (1972)].' *Trzcinski* v. *Richey,* 190 Conn. 285, 295, 460 A.2d 1269 (1983)." *Lomangino* v. *LaChance Farms, Inc.,* 17 Conn. App. 436, 440, 553 A.2d 197 (1989).

At trial, evidence was presented that, prior to the third floor demolition, the damage sustained by the structure from the fire amounted to 50 percent of the value of the property, and that 25 to 40 percent of the structure was missing. There was testimony indicating that, subsequent to the demolition work, 55 to 65 percent of the structure was missing. The plaintiff testified that after the demolition, he contacted the building official to inquire about rebuilding the structure to its previous five units, and was informed that, due to a zoning regulation, the plaintiff would be unable to rebuild the structure to five units because the structure had been damaged in excess of 50 percent of its fair market value.

We conclude that there was sufficient evidence from which the jury could find that the actions of the Hamden building official, in ordering the partial demolition, caused the value of the damage to the structure to exceed 50 percent of its fair market value, thereby resulting in the plaintiff's loss of the five unit nonconforming use.

The defendant's third and fourth claims of error relate to the trial court's charges to the jury on the

issues of damages and liability. The defendant claims that the trial court erred in its instruction to the jury on damages and in its failure to instruct the jury on the question of whether the condition of the plaintiff's building after the fire constituted a nuisance.

Neither of the defendant's claims relating to the court's jury charge was raised by the defendant in its motion to set aside the verdict. In fact, the portion of the jury charge relating to the standard for assessing liability, to which the defendant now assigns error, was the defendant's requested charge on the issue.

"In order to preserve full appellate review of a jury charge assigned as error, an appellant must not only move to set aside the verdict; *Small* v. *South Norwalk Savings Bank,* 205 Conn. 751, 758, 535 A.2d 1292 (1988); but must also set forth, either in the motion itself, in supporting briefs, or in oral argument at a hearing on the motion, each claim of error with sufficient specificity to enable the trial court to consider the claimed errors." *Cuartas* v. *Greenwich,* 14 Conn. App. 370, 374, 540 A.2d 1071 (1988). Because the claimed errors relating to the trial court's charge to the jury were not raised by the defendant's motion to set aside the verdict, our review is limited to a determination of whether the trial court committed plain error. *Van Dyck Printing Co.* v. *Johnson Graphics, Ltd.,* 15 Conn. App. 119, 121, 543 A.2d 1349 (1988); *Cuartas* v. *Greenwich,* supra, 375. " 'Review for plain error is " 'reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings.' *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985)." *Kolich* v. *Shugrue,* 198 Conn. 322, 326, 502 A.2d 918 (1986).' *Small* v. *South Norwalk Savings Bank,* supra, 759." *Cuartas* v. *Greenwich,* supra.

The defendant has offered no persuasive authority in support of its claims that the charges to the jury on the issues of liability and damages were contrary to law. The defendant has failed to show that the trial court committed plain error in charging the jury with respect to the issues of liability and damages.

## II

In his cross appeal, the plaintiff claims that the trial court erred in denying his motions for additur. The plaintiff filed a motion for additur following announcement of the verdict, claiming interest from July 13, 1981, the date of the partial demolition. The motion was denied. The plaintiff filed a motion for additur following acceptance of the verdict, which was also denied. The trial court's reason for denying the motions for additur was that interest must be based on a factual finding that the money was wrongfully withheld.

It has been recognized that interest, as an element of damages, is a matter within the province of the jury. *Canton Motor Car Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 464, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986). "This principle derives from the recognition that 'the question of [interest as] damages . . . is . . . inextricably mixed' with the merits of the underlying claims. *Rosenblatt* v. *Berman,* [143 Conn. 31, 39, 119 A.2d 118 (1955)]. In each case, the jury must determine whether the detention of the money is wrongful under the circumstances, and whether justice requires the allowance of interest as damages for the loss of use of money." Id.

In the present case, there were no interrogatories and there were no instructions to the jury on the issue of interest. The jury, therefore, did not award interest. Having failed to raise the issue of interest prior

to the submission to the jury of the case, the plaintiff was not entitled to the additur, and it would have been error for the court to have granted the motions.[2]

There is no error on the appeal or the cross appeal.

In this opinion the other judges concurred.

---

[2] In support of his claim of error, the plaintiff argues that he is entitled to interest as a matter of law. The plaintiff cites cases relating to interest in the context of compensation for the state's exercise of its powers of eminent domain. The plaintiff concedes that the present case was tried on the theory of an arbitrary and illegal abuse of the defendant's powers, and not on the theory of eminent domain. As such, authority relating to eminent domain is inapposite to the plaintiff's claim of error.